UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| ANTHONY R. DORSI, | Case No. 2:22-cv-01749-EJY |
| Plaintiff, | |
| v. | **ORDER** |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | |
| Defendant. | |

Pending before the Court is Plaintiff Anthony R. Dorsi's ("Plaintiff") Motion for Reversal and Remand arising from the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for disability insurance under Title II of the Social Security Act (the "Act"). ECF No. 18. On March 22, 2023, the Commissioner filed his Responsive Brief. ECF No. 20. For the reasons stated below the Court grants Plaintiff's Motion.

## I.    BACKGROUND

Plaintiff filed an application for disability insurance benefits on October 24, 2019 alleging disability beginning on December 2, 2018. Administrative Record ("AR") 244-245. The Social Security Administration denied Plaintiff's claim initially and upon reconsideration (AR 180-184, 186-190), followed by Plaintiff's request for a hearing before an Administrative Law Judge ("ALJ"). AR 191-192. The ALJ held a hearing on July 20, 2021. AR 1110-1138. On September 15, 2021, the ALJ issued her decision finding Plaintiff not disabled. AR 68-90. Plaintiff requested review of the ALJ's decision (AR 242-243), which was denied by the Appeals Council on August 22, 2022. AR 1-7. Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

## II.    STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

Substantial evidence is "more than a mere scintilla." It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (quoting *Biestek v. Berryhill*, -- U.S. --, 139 S.Ct. 1148, 1154 (2019)). In reviewing the Commissioner's alleged errors, the Court must weigh "both the evidence that supports and detracts from the … [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986) (internal citations omitted).

"When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson*, 359 F.3d at 1198, *citing Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). However, a reviewing court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (internal citation omitted). And a court may not reverse an ALJ's decision based on a harmless error. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal citation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## III.    DISCUSSION

A.    Establishing Disability Under the Act.

To establish whether a claimant is disabled under the Social Security Act, there must be substantial evidence that:

> 1. the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and
>
> 2. the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999), *citing* 42 U.S.C. § 423(d)(2)(A). "If a claimant meets both requirements, he or she is disabled." *Id*.

The ALJ uses a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a). Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180

F.3d at 1098 (internal citation omitted); 20 C.F.R. § 404.1520.  The claimant carries the burden of

proof at steps one through four, and the Commissioner carries the burden of proof at step five.

*Tackett*, 180 F.3d at 1098.

The five steps consider:

Step 1. Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" within the meaning of the Social Security Act and is not entitled to disability insurance benefits.  If the claimant is not working in a substantially gainful activity, then the claimant's case can be resolved at step one and the evaluation proceeds to step two.  *See* 20 C.F.R. § 404.1520(b).

Step 2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to disability insurance benefits.  If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three.  *See* 20 C.F.R. § 404.1520(c).

Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to disability insurance benefits.  If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four.  *See* 20 C.F.R. § 404.1520(d).

Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to disability insurance benefits.  If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step.  *See* 20 C.F.R. § 404.1520(e).

Step 5. Is the claimant able to do any other work? If not, then the claimant is "disabled" and entitled to disability insurance benefits.  *See* 20 C.F.R. § 404.1520(f)(1).  If the claimant is able to do other work, then the Commissioner must establish there are a significant number of jobs in the national economy the claimant can do.  There are two ways for the Commissioner to meet the burden of showing there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert [("VE")], or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2.  If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to disability insurance benefits.  *See* 20 C.F.R. §§ 404.1520(f), 404.1562.  If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to disability benefits.  *See id*.

At step one, the ALJ found Plaintiff meets the insured status required by the Act through

December 31, 2024 and has not engaged in substantial gainful activity since December 2, 2018, the

alleged disability onset date.  AR 73.  At step two, the ALJ found Plaintiff had severe impairments

of right foot nerve damage due to two fibroma tumor surgeries, lumbar disorder, and cervical

disorder.  AR 74.  At step three, the ALJ found none of Plaintiff's severe impairments, considered

singly or in combination, meet or medically equal the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1.  AR 77.

In preparation for step four, the ALJ determined "[a]fter careful consideration of the entire record, … [Plaintiff] has the residual functional capacity [("RFC")] to perform light work as defined in 20 CFR 404.1567(b) such that he can lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk for 6 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday. … [Plaintiff] can: never climb ladders, ropes, or scaffolds, or crawl; frequently climb ramps and stairs, stoop, kneel, or crouch; occasionally reach overhead; and have only occasional exposure to extreme cold, vibration, and hazards such as unprotected heights, and dangerous moving machinery, like jackhammers and chainsaws."  AR 79.

At step four, the ALJ concluded Plaintiff is capable of performing his past relevant work as a real estate sales agent or hotel manager.  AR 87-88.  This finding was based on the Vocational Expert's ("VE") testimony stating the same.  AR 88.  In addition, as an alternative to step five, the ALJ found there were other jobs in the national economy Plaintiff could perform.  AR 88.  Because the ALJ concluded Plaintiff could make a successful adjustment to work that exists in significant numbers in the national economy, the ALJ determined Plaintiff was not disabled from December 2, 2018 through the date of the ALJ's decision.  AR 90.

B.   Plaintiff's Claims.

1.   *Plaintiff Argues the ALJ Erred by Finding Dr. Khan's Opinions Unpersuasive.*

Plaintiff argues the ALJ did not properly evaluate the medical evidence in assessing his RFC.  ECF No. 18 at 6.  To support this argument Plaintiff focuses on two opinions rendered by Dr. Lubna Khan.  *Id.*  First, in March 2021, Dr. Khan opined that Plaintiff "is not able to mostly sit with possible standing or walking for brief periods of time or lift, carry, push, and/or pull up to 10 pounds occasionally on a full-time basis."  *Id.* at 6-7 *citing* AR 1092-1093.  In July 2021, Dr. Khan opined that Plaintiff would require the following restrictions in the workplace:

> walk one-quarter of a city block without rest or severe pain, sit 15 minutes at a time for a total of less than two hours in an eight-hour workday, stand for 15 minutes at a time, stand or walk for a total of less than two hours in an eight-hour workday, needs a job that permits shifting positions at will from sitting, standing or walking, needs to walk around for 15 minutes every 15 minutes, needs to take unscheduled breaks for

1

2

3

4

5

6

7

8

15 minutes every 20 to 30 minutes due to muscle weakness, chronic fatigue, pain/paresthesias and numbness as well as adverse effects of medication, and should elevate his leg(s) 10 inches for five percent of an eight-hour working day with prolonged sitting due to numbness and pain …. [Plaintiff] must use a cane or other hand-held assistive device due to imbalance, insecurity, pain, and weakness, can lift and carry less than 10 pounds rarely, occasionally twist, rarely stoop and climb stairs, never crouch or climb ladders, and can use his hands, fingers, and arms to grasp/turn/twist objects, perform fine manipulations, and reach in front of his body and overhead 50 percent of an eight-hour working day with the right upper extremity but only five percent of an eight-hour working day with the left upper extremity …. [Plaintiff] is likely to be off task 25 percent or more of a typical workday, is incapable of even low stress work due to his emotional and physical stress, and is likely to be absent from work about three days per month, on the average, as a result of his impairments.

9

*Id.* at 7 *citing* AR 1105-1109.

10

11

12

13

14

15

16

17

18

19

Plaintiff argues the ALJ erred by finding Dr. Khan's opinions unpersuasive because the doctor's opinions are consistent with the overall medical record. *Id. citing* AR 87. Plaintiff points to a series of podiatry and physical therapy records highlighting Plaintiff's gait disturbance as well as Dr. Khan's observations in June 2020 that Plaintiff walked with a limp and had staggered gait. *Id.* at 8 *citing* AR 512, 515, 520, 525, 528, 531, 535, 537, 539, 935, 956, 970, 972, 983, 990, 998, 1017, 1031, 1047, 1050. In June 2020, Dr. Khan noted Plaintiff required a scooter when ambulating for extended distances and was unable to walk greater than 100 feet without stopping to rest his foot. *Id. citing* AR 937. Plaintiff also points to a series of injections to treat his foot, neck, and back pain, not all of which were successful. *Id. citing* AR 423, 500, 515, 518, 524, 526, 528, 572, 578, 587, 916. Plaintiff was prescribed Norco to treat his pain. *Id. citing* AR 504, 573, 754, 810.

20

21

22

23

24

25

26

27

Plaintiff notes his functional capacity evaluation ("FCE") on June 30, 2022, showing he was unable to perform the demands of sedentary work on a consistent basis. *Id. citing* AR 22. Plaintiff states this evidence was given to the Appeals Council, but the Council concluded the findings had no relevance to the alleged period of disability. *Id. citing* AR 2. Plaintiff says that finding was incorrect because the FCE data related to the period through September 15, 2021 (the date of the ALJ's decision) and the findings are consistent with the overall record thus supporting Dr. Khan's opinions. *Id.* at 9. Because of the error in evaluating Dr. Khan's opinions, Plaintiff asks the Court to remand this matter for further proceedings. *Id.*

28

2.   *Plaintiff Contends the ALJ Failed to Articulate Clear and Convincing Reasons for Discounting His Subjective Complaints.*

Plaintiff disputes the ALJ's rejection of the persistence and limiting effects of his limitations. *Id.* at 11 *citing* AR 80.  Plaintiff accuses the ALJ of failing to adequately tie the medical evidence in the record to Plaintiff's testimony she found not credible.  *Id.*  Plaintiff disagrees with the ALJ's classification of Plaintiff's treatment methods—numerous injections and prescription narcotic medication—as "conservative." *Id.* at 11-12.  Plaintiff also takes issue with the ALJ citing Plaintiff's ability to complete some routine daily activities as a basis for discounting Plaintiff's subjective complaints.  *Id.* at 12 *citing* AR 80.  Plaintiff says the ALJ did not explain the nexus between Plaintiff's ability to engage in such activities, particularly his ability to drive and take care of his son, and the rigors of full-time employment.  *Id.*  Plaintiff disagrees with the ALJ's finding that there is a lack of objective support for Plaintiff's complaints.  *Id.* at 13.  Finally, Plaintiff contends the medical evidence in the record does not paint a benign picture of Plaintiff's condition.  *Id.*

C.   The Commissioner's Response.

1.   *The Commissioner Asserts the ALJ Correctly Found Dr. Khan's Opinions Unpersuasive.*

The Commissioner contends the ALJ correctly found Dr. Khan's July 2021 opinion unpersuasive as the doctor supported her opinion solely based on laboratory work and her findings were not supported by treatment notes.  ECF No. 20 at 4 *citing* AR 86-87.  According to the Commissioner, each of Dr. Khan's opinions was inconsistent with other medical evidence in the record showing no apparent issues with Plaintiff's right elbow, routine and conservative treatment from orthopedists and podiatrists through October 2019, and no specialized treatment for Plaintiff's foot after that time.  *Id.* at 5 *citing id.*

2.   *The Commissioner Contends Substantial Evidence Supports the ALJ's Discounting of Plaintiff's Subjective Complaints.*

The Commissioner argues the ALJ properly concluded Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the overall record.  *Id.* at 6.  The Commissioner contends the record shows Plaintiff received only routine

1    and relatively conservative care since the date of disability onset.  *Id. citing* AR 80.  The

2    Commissioner disputes Plaintiff's assertion that the use of injections and narcotics medication

3    cannot be classified as conservative, arguing that it is the ALJ's discretion to make such a finding.

4    *Id.* at 7.

5          The Commissioner further argues the record reflects mostly benign physical examinations

6    such as a normal exam with Dr. Khan in December 2019, a normal primary care exam in January

7    2020, and observations at a February 2021 exam where Plaintiff walked without difficulty and had

8    painless range of motion throughout his body.  *Id.* at 8 *citing* AR 80, 84-85.  The Commissioner

9    contends these examples support the ALJ's discounting Plaintiff's complaints.  *Id.*  Finally, the

10   Commissioner notes Plaintiff admitted engaging in activities such as shopping, driving, doing

11   laundry, making beds, preparing meals, helping take care of his son, regularly visiting family, and

12   attending religious services.  *Id.* at 9 *citing* AR 80, 313-316.  The Commissioner says the ALJ

13   interpreted these activities as contrary to Plaintiff's subjective complaints is appropriate and should

14   not be disturbed.  *Id.*

15   D.      Summary of the ALJ's Decision.

16         The ALJ first summarized Plaintiff's complaints at the July 20, 2021 hearing.  AR 80.

17   Plaintiff contended he cannot work because of a limp caused by a tumor at the bottom of one of his

18   feet.  *Id.*  Plaintiff said despite numerous efforts to address the tumor, all treatment methods thus far

19   have failed including the tumor's regrowth after it was surgically removed.  *Id.*  Plaintiff stated  his

20   balance is impaired as, for example, he needs to lean on a cart when visiting the grocery store to

21   keep from falling.  *Id.*  Plaintiff claimed he is unable to complete household tasks such as vacuuming

22   and laundry without taking breaks.  *Id.*  Plaintiff asserted that his right foot pain prohibits him from

23   driving for longer than 15 minutes and that his overall pain level prevents him from sitting

24   comfortably or standing for longer than 15 minutes.  *Id.*  Plaintiff finally asserted he is prone to

25   dropping items such as dishes and cups.  *Id.*  After recapping Plaintiff's testimony, the ALJ found

26   Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms to

27   be inconsistent with the medical record that reflects conservative treatment, benign physical exams,

28   and an ability by Plaintiff to drive and take care of his young son.  *Id.*

The ALJ then discussed Plaintiff's back, neck, and foot pain over the past several years beginning with a November 2018 MRI of Plaintiff's right foot and his December 2018 car accident one day after the onset of Plaintiff's alleged disability. *Id. citing* AR 563-564. Following the accident Plaintiff consulted with a pain management doctor who observed Plaintiff had limited and painful range of motion in the cervical spine, tenderness and spasms across the cervical segments, mildly painful range of motion in the lumbar spine, and slightly decreased sensation following an L4/L5 distribution. *Id. citing* AR 639-640. The doctor also found Plaintiff had normal strength in the bilateral lower extremities. *Id. citing id.* The doctor recommended Plaintiff apply gentle heat and a foam roller for spasms and tightness, along with prescribing Norco, Tizanidine, Baclofen, and Celebrex to be taken as needed. AR 80-81 *citing* AR 641.

One week after the December 12, 2018 excision of Plaintiff's right foot plantar fibroma, Plaintiff saw a podiatrist who observed Plaintiff using a knee scooter and exhibiting mild edema and swelling but have normal pulses, strength, reflexes, and distal sensation in his feet. AR 81 *citing* AR 539-540, 567-568. Plaintiff's status remained the same at his December 31, 2018 podiatrist visit. *Id. citing* AR 537-538. When Plaintiff presented to physical therapy on January 9, 2019, he exhibited decreased range of motion, strength, balance, flexibility, joint mobility, sensation, soft tissue mobility, increased pain and impairments to his posture, body mechanics, and gait. *Id. citing* AR 1042-1044. A January 19, 2019 MRI revealed numerous issues with Plaintiff's spinal cord leading to neural foraminal narrowing. AR 81-82 *citing* AR 642-645. When Plaintiff followed up with his podiatrist on January 21, 2019, he was limping, weight bearing with regular shoes, and reported swelling and pain around the incision on his right foot. AR 82 *citing* AR 535-536.

In late January 2019, pain management recommended Plaintiff undergo epidural steroid injections. *Id. citing* AR 421. The recommendation was echoed by a sports medicine physician on February 1, 2019 who advised Plaintiff to follow up once the injection was administered. *Id. citing* AR 533-534. At a podiatry visit on February 5, 2019, Plaintiff reported small bumps on the bottom of this right foot and pain when walking. *Id.* Plaintiff reported no improvement one and a half weeks after an epidural injection on February 14, 2019, and the pain management physician continued Plaintiff on conservative treatment. *Id. citing* AR 628-631. A follow up with podiatry on

May 14, 2019 yielded similar results as Plaintiff's status was largely unchanged. *Id.* An MRI was ordered of Plaintiff's right foot revealing a new plantar fibroma and neuroma. *Id. citing* AR 561-562. On May 28, 2019, Plaintiff followed up with pain management and podiatry reporting continuing pain. *Id. citing* AR 616-619. On June 10, 2019, Plaintiff was discharged from physical therapy after not attending a session in more than thirty days. *Id. citing* 983-984.

On July 10, 2019, Plaintiff's second right foot plantar fibroma was removed and over the next few weeks Plaintiff moved from non-weight to weight-bearing as tolerated. AR 83-84 *citing* AR 441, 510-511. Plaintiff was subsequently referred to physical therapy where he initially complained of severe pain in his right foot and was noted to have decreased range of motion, strength, flexibility, and gait. AR 84 *citing* 956-962. Just as before, Plaintiff was discharged from physical therapy because he failed to attend his sessions. *Id. citing* 954-955.

In August 2019, Plaintiff reported increasing neck pain radiating into his right arm and shoulder blade. *Id.* After a September 2019 shoulder injection, Plaintiff reported some pain relief. *Id. citing* AR 598-602. Shoulder injections were repeated in December 2019. *Id. citing* AR 584-588. In October 2019 Plaintiff complained of pain in his right ankle, was physically limping, and had tenderness and swelling in his right foot. *Id.* Plaintiff was referred by podiatry to receive a second opinion on his foot, but there is no evidence in the record that Plaintiff took this step. *Id. citing* AR 505.

Plaintiff first saw Dr. Khan for primary care in December 2019 at which time he demonstrated normal clinical signs. *Id. citing* AR 918-921. This was repeated at a follow up visit in January 2020. *Id. citing* AR 922-925. In January 2020, Plaintiff complained of discomfort in his pelvic area when sitting but reported feeling better in February 2020. AR 85. A Toradol injection was ordered along with continued conservative treatment that was unchanged from February to May 2020. *Id. citing* AR 569-578, 656-660, 671-675. In response to Plaintiff's June 11, 2020 complaints that he could not walk more than 100 feet due to pain in the bottom of his right foot, Dr. Khan completed a form requiring Plaintiff to use a one-leg scooter for two years when ambulating for extended distances. *Id. citing* AR 934-937. In June and July 2020 Plaintiff reported his right foot pain had not changed materially and he was having side effects from his medication. *Id.* This pattern of

no substantial change in Plaintiff's pain level continued into January 2021. *Id.* In February 2021, when consulting Dr. Khan, Plaintiff complained of back pain but had no pain or edema in his extremities upon examination, ambulated without difficulty, and had a painless range of motion in the musculoskeletal system. *Id. citing* AR 1094-1097.

The ALJ discussed various medical opinions and administrative findings in the record including Dr. C. Bullard's May 15, 2020 and Dr. Hoa-Tuyet Bui's December 7, 2020 opinions. AR 86. Deeming them to be persuasive, the ALJ found these opinions were supported by generally benign medical exams and were consistent with the evidence received at the hearing level revealing routine follow-up visits with pain management and primary care. *Id.*

Turning to Dr. Khan's opinion, the ALJ focused on the doctor's notes concerning Plaintiff's neuroma in his right foot, decreased balance, pain in his right elbow, inability to stand and walk for prolonged periods of time, and an inability to do daily functions without constant pain. AR 87 *citing* AR 1092. The ALJ noted Dr. Khan relied on her experience treating Plaintiff over time, the intensity, persistence, and functionally limiting effects of Plaintiff's symptoms, Plaintiff's description of limitations, the consistency of Plaintiff's complaints over time, Plaintiff's response to treatment, Plaintiff's daily activities, reports from other medical care providers, and the degree of consistency of Plaintiff's complaints with medical signs and laboratory findings. *Id. citing* AR 1108. However, the ALJ took issue with Dr. Khan's failure to identify any specific lab work done on Plaintiff that would support her restrictions. *Id. citing* AR 1105. The ALJ criticized Dr. Khan's "excessive limitations" when they were unsupported by her treatment notes that indicated normal exams. *Id. citing* AR 918-921, 926-942, 1094-1101. Finally, the ALJ found Dr. Khan's findings inconsistent with the overall record given the lack of evidence demonstrating complaints about or abnormalities of Plaintiff's right elbow, generally routine and conservative treatment from orthopedists and podiatrists in October 2019, and no specialized treatment for Plaintiff's foot pain after October 2019. *Id.* The ALJ deemed Dr. Khan's opinion unpersuasive. *Id.*

1

2

E.      Analysis

        1.      *The ALJ Committed Error When Analyzing Dr. Khan's Opinions.*[1]

3      Cases filed on or after March 27, 2017, are governed by regulations requiring the ALJ to

4 consider "supportability" and "consistency" as the main factors in determining persuasiveness of

5 medical opinions and findings.  20 C.F.R. § 404.1520c(2).  An ALJ may not find a medical opinion

6 unpersuasive based on "sheer disbelief."  *Timpone v. Kijakazi*, Case No. 18-55155, 2022 WL

7 1599128, at *1 (9th Cir. May 20, 2022), *citing Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir.

8 2004).  An ALJ must provide a "specific and legitimate reason" to discount a treating physician's

9 opinion.  *Id.* (citation omitted).  An ALJ cannot selectively isolate notes of a medical source, but

10 instead must consider the treatment record as a whole.  *Martinez v. Berryhill*, 721 Fed.Appx. 597,

11 599 (9th Cir. 2017); *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014); *Holohan v. Massanari*,

12 246 F.3d 1195, 1205 (9th Cir. 2001) (cautioning against "selective" reading of "treatment notes"

13 and noting that medical improvements "must be read in context of the overall diagnostic picture").

14      The ALJ offered several reasons for finding Dr. Khan's opinion to be unpersuasive including

15 the doctor's failure to cite specific lab work, Plaintiff's generally normal physical exams, a

16 comparison with the overall medical record, and the methods used to treat Plaintiff.  These

17 justifications are not supported by substantial evidence.

18      Even if Dr. Khan did not reference specific lab findings, the Commissioner did not cite, and

19 the Court found no case law standing for the proposition that a failure to list specific laboratory

20 findings entitles the ALJ to discount an entire medical opinion.  Moreover, Dr. Khan's December

21 2019 to October 2020 treatment notes reflect that after Plaintiff's right foot surgeries he suffered

22 chronic pain requiring pain management follow up, a lesion appeared on his plantar nerve, and the

23

24

---

[1]      Plaintiff's contention stated in the header on page 5 of the Motion to Remand (ECF No. 18) does not match the contents of his arguments.  This section of Plaintiff's Motion is devoted to arguing the ALJ's findings regarding Dr. Khan's opinions are erroneous.  *Id.* at 7:23-9:12.  Therefore, the Court addresses this argument.

25

26

27

28

        Further, Plaintiff contends the Court must consider new evidence presented to the Appeals Council.  *Id.* at 8-9 (internal citation omitted).  In response, the Commissioner argues the new evidence—a June 2022 evaluation by physical therapist Karen Crawford—postdated the ALJ's decision by nine months.  ECF No. 20 at 5.  For this reason, the Commissioner says the Appeals Council correctly found Ms. Crawford's opinion had no bearing on whether Plaintiff was disabled from his alleged onset date (December 2018) through the ALJ's decision (September 2021).  *Id.*  The Court agrees with the Commissioner.  Ms. Crawford's findings are not considered as "the new evidence pertained to a period after the ALJ's decision."  *Maiorino v. Kijakazi*, Case No. 19-55599, 2022 WL 2072651, at *2 (9th Cir. June 9, 2022), *citing Shaibi v. Berryhill*, 883 F.3d 1102, 1110 (9th Cir. 2017).

doctor recommended Plaintiff use a one leg scooter for walking over extended distances.  AR 921, 929, 933, 937, 942.  Dr. Khan's observations, as stated in a July 27, 2021 Medical Source Statement, synthesize Plaintiff's impairments for the period December 2018 until February 2021 including the plantar fibromas, which caused him intense pain that could not be remedied.  AR 1103-1109.  By focusing on Dr. Khan's failure to reference specific lab work and ignoring the remainder of Dr. Khan's medical records, the ALJ did a selective reading of the treatment notes and did not consider the record as a whole.

The ALJ also discounted Dr. Khan's opinion because Plaintiff underwent only "routine, conservative treatment" from his orthopedists and podiatrists through October 2019, and because there was an absence of specialized treatment on Plaintiff's right foot after October 2019.  AR 87.  However, case law controverts the ALJ's finding of conservative treatment given Plaintiff's thirteen injections over a sixteen month period, six of which were in his right foot from which tumors were twice removed and which the record reflects, as Plaintiff testified, caused his continuous pain.  AR 80-81, 83.  Case law in the Ninth Circuit holds (albeit not uniformly) that injections intended to relieve chronic pain together with prescriptions for narcotics such as Norco that Plaintiff received are "not conservative/routine treatments."  *See Thomas v. Kijakazi*, Case No. 2:22-cv-00571-VCF, 2022 WL 17716757, at *3 (D. Nev. Dec. 15, 2022) ("The Ninth Circuit has found injections to be nonconservative") *citing Garrison v. Colvin*, 759 F.3d 995, 1015 n. 20 (9th Cir. 2014), *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017), and *Childers v. Berryhill*, Case No. 3:18-cv-00170-RCJ-CBC, 2019 WL 1474030, at *9 (D. Nev. Mar. 12, 2019) ("Many courts consider the use of narcotics and injections for pain management not conservative in nature") (additional citations omitted).[2]

In sum, the Court finds the ALJ's analysis and conclusion to discount Dr. Khan's opinions were not supported by specific and legitimate reasons as the analysis reflects a selective reading of the record.  The ALJ's error is properly addressed through further proceedings that will allow the

---

[2]     *See Hebert v. Kijakazi*, Case No. 2:22-cv-01614-NJK, 2023 WL 2238849, at *4 (D. Nev. Feb. 27, 2023) ("[T]his Court, and courts in the Ninth Circuit generally, have rejected contentions that trigger point injections combined with pain medication constitute more than conservative treatment.") (citation omitted).

1   ALJ to consider the record as a whole, including all of Dr. Khan's medical records and opinions, in

2   order to determine if Plaintiff is, in fact, able to work under a potentially revised RFC.

3            2.      *The ALJ's Finding that Plaintiff's Testimony Was Inconsistent with the Record is Not*
                     *Supported by Clear and Convincing Evidence.*
4

5            An ALJ must engage in a two-step analysis when considering whether a plaintiff's testimony

6   regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether there is

7   objective medical evidence of an underlying impairment which could reasonably be expected to

8   produce the pain or other symptoms alleged." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)

9   (internal quotation marks omitted).  "The … [plaintiff] is not required to show that her impairment

10  could reasonably be expected to cause the severity of the symptom she has alleged; she need only

11  show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572

12  F.3d 586, 591 (9th Cir. 2009) (citations and internal quote marks omitted).  Second, "[i]f the

13  [plaintiff] meets the first test and there is no evidence of malingering, the ALJ can only reject the

14  [plaintiff's] testimony about the severity of the symptoms if she gives specific, clear and convincing

15  reasons for the rejection."  *Ghanim*, 763 F.3d at 1163 (internal citation and quotations omitted).

16  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and

17  what evidence undermines the [plaintiff's] complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821,

18  834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make

19  a credibility determination with findings sufficiently specific to permit the court to conclude that the

20  ALJ did not arbitrarily discredit [the plaintiff's] testimony.").  Further, "[w]hile an ALJ may find

21  testimony not credible in part or in whole, he or she may not disregard it solely because it is not

22  substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d

23  880, 883 (9th Cir. 2006).

24           The ALJ concluded Plaintiff's medically determinable impairments could reasonably be

25  expected to cause his alleged symptoms.  AR 80.  However, the ALJ found the objective medical

26  evidence did not support Plaintiff's assertions regarding the intensity of his pain because Plaintiff

27  (1) received generally conservative treatment, (2) had benign physical exams, and (3) could drive

28

1   and take care of his young son.  *Id.*  However, the record reflects the ALJ's reliance on these three

2   conclusions is neither a clear nor convincing reason for rejecting Plaintiff's testimony.

3          First, as referenced above, Plaintiff's treatment methods—multiple injections and the use of

4   narcotics—are not properly characterized here as conservative.  *Childers*, 2019 WL 1474030, at *9,

5   *Sanchez v. Kijakazi*, Case No. 2:22-cv-00936-VCF, 2023 WL 1382517, at *4 (D. Nev. Jan. 30, 2023)

6   (holding that the ALJ committed error by citing injection therapy as a basis for discounting the

7   plaintiff's testimony).  Second, in analyzing the record, the ALJ reached her conclusion despite

8   citing medical records for the period December 2018 until February 2021 (with the exception of

9   doctor's visits in September 2019 and February 2021 when Plaintiff showed slight improvement),

10  finding severe pain in Plaintiff's right foot and upper extremities.  *See* AR 80-85.  When discounting

11  a plaintiff's symptom testimony, an ALJ cannot focus on certain instances of improvement without

12  acknowledging the remainder of the medical record demonstrating ongoing pain.  *Kristina A. v.*

13  *Kijakazi*, Case No. 2:21-cv-01992-BNW, 2023 WL 4157257, at *5 (D. Nev. Jun. 22, 2023)

14  ("[A]lthough the ALJ noted that there were temporary moments of improvement … the ALJ's

15  general discussion of the medical evidence did not explain how the … evidence detracted from

16  Plaintiff's credibility," leading the Court to find the "ALJ failed to provide a sufficient basis to find

17  that Plaintiff's allegations were not entirely credible."), *citing Lambert v. Saul*, 980 F.3d 1266, 1278

18  (9th Cir. 2020) ("Although the ALJ did provide a relatively detailed overview of [the claimant's]

19  medical history, providing a summary of medical evidence ... is not the same as providing clear and

20  convincing reasons for finding the claimant's symptom testimony not credible.") (internal quotation

21  omitted).  Here, the Court finds the ALJ's general reference to "benign physical examinations" an

22  inadequate basis to discount Plaintiff's symptom testimony.  The ALJ did not analyze Plaintiff's

23  symptom testimony in the context of the overall record the majority of which shows anything but

24  normal exams.

25         Finally, "ALJs must be especially cautious in concluding that daily activities are inconsistent

26  with testimony about pain, because impairments that would unquestionably preclude work and all

27  the pressures of a workplace environment will often be consistent with doing more than merely

28  resting in bed all day."  *Garrison*, 759 F.3d at 1016; *see also Albertson v. Colvin*, 659 Fed.Appx.

372, 374 (9th Cir. 2016).  An ALJ's brief recitation of a plaintiff's daily activities does not, without more, constitute a clear and convincing reason to reject her symptom testimony.  *Leza v. Kijakiazi*, Case No. 21-16079, 2022 WL 819782, at *2 (9th Cir. Mar. 17, 2022), *citing Garrison*, 759 F.3d at 1016.  "When an ALJ finds that a claimant's daily activities are consistent with regularly attending a full-time job, the ALJ must explain why those particular activities establish that the claimant has the ability to maintain regular attendance at work."  *Slaughter v. Berryhill*, Case No. 2:15-cv-00392-PAL, 2018 WL 1568678, at *9 (D. Nev. Mar. 30, 2018), *citing Popa v. Berryhill*, 872 F.3d 901, 906 (9th Cir. 2017).

The ALJ identifies two daily activities to support her conclusion that Plaintiff's testimony is properly discounted.  Specifically, the ALJ relies on Plaintiff's report that he "drives and helps take care of his young son."  AR 80.  Despite the ALJ's description of these activities, she does not link them to her conclusion that Plaintiff's testimony regarding pain is properly discounted.  *See Burrell v. Colvin*, 775 F.3d 1133, 1137-38 (9th Cir. 2014); s*ee also Keith v. Berryhill*, Case No. 2:18-cv-01110-JAD-VCF, 2019 WL 3326180, at *4 (D. Nev. Jul. 9, 2019) (holding that engaging in daily activities, including caring for a child, is not enough to controvert the testimony of a claimant's pain level).  Instead, the ALJ reaches a conclusion without fully considering Plaintiff's nonconservative treatment, non-benign medical exams, and that Plaintiff can only drive and take care of his son while experiencing significant pain in his right foot and upper extremities.  *Compare* AR 80 (where the ALJ deems Plaintiff's symptom testimony inconsistent with the record) *with* AR 81-85 (reciting in detail Plaintiff's right foot and upper extremity ailments during the disability period).  Simply stated, the ALJ committed reversible error when she failed to link this record to her finding that objective medical evidence did not support Plaintiff's assertions regarding the intensity of his pain.  *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (holding that an ALJ commits legal error when failing to link claimant's testimony found not credible to particular parts of the record supporting ALJ's non-credibility determination).

F.      Conclusion.

The decision whether to remand for further proceedings is within the discretion of the district court.  *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000).  Where no useful purpose would

1    be served by further proceedings, or where the record has been fully developed, it is appropriate to

2    exercise this discretion to direct an immediate award of benefits. *Id.* at 1179.  However, where there

3    are outstanding issues that must be resolved before a determination can be made, and it is not clear

4    from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were

5    properly evaluated, remand is appropriate.  *Id.*  Here, as set out above, outstanding issues remain

6    before a finding of disability can be made.  Accordingly, remand is appropriate.

7                                               **IV.    ORDER**

8             IT IS HEREBY ORDERED that Plaintiff's Motion for Reversal and/or Remand (ECF No.

9    18) is GRANTED in part and DENIED in part.

10            IT IS FURTHER ORDERED that this case is remanded to the Commissioner of Social

11   Security for additional proceedings pursuant to sentence four of 42 U.S.C. § 405(g) consistent with

12   the concerns expressed above.

13            DATED this 17th day of July, 2023.

14

15

16   ELAYNA J. YOUCHAH
     UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26

27

28